UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| ARON C. COTTRELL | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 4:07-cv-32-AS-APR |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Aron C. Cottrell ("Mr. Cottrell"), seeks judicial review of the denial of benefits under Title II of the Social Security Act. The Commissioner of Social Security found that Mr. Cottrell was not disabled and not entitled to Disability Insurance Benefits ("DIB") under 42 U.S.C. §§ 416(I), 423.

Mr. Cottrell applied for DIB on April 14, 2005, claiming a disability onset date of July 19, 2004, when he suffered his second stroke-like episode. Mr. Cottrell's initial claim and request for reconsideration were denied. Mr. Cottrell then requested a hearing in front of an Administrative Law Judge, which was conducted by Peter Americanos ("the ALJ") on May 8, 2006.[1] The ALJ issued an opinion dated July 24, 2007, denying his application for benefits. Mr. Cottrell filed a request for review which was denied by the Appeals Council, making the ALJ's July 24, 2007 decision the final decision of the Commissioner. Mr. Cottrell filed his complaint

---

[1]The Court takes judicial notice of the May 8, 2006 administrative hearing in which Mr. Cottrell appeared along with his wife, Jennifer Cottrell, and a non-attorney representative. The hearing included testimony from Mr. Cottrell, medical expert Paul A. Boyce, M.D., who is board certified in internal medicine, and vocational expert Ray O. Burger, who is a certified rehabilitation counselor. Tr. 745-78.

on June 6, 2007, contending that the decision by ALJ Americanos is not supported by substantial evidence and is contrary to law. Jurisdiction is conferred upon this Court pursuant to 42 U.S.C. § 405(g), and a hearing was held on June 25, 2008 in Lafayette, Indiana.

## FACTUAL BACKGROUND

Mr. Cottrell was born on May 26, 1970, is currently thirty-eight years old, and is therefore considered a "younger person." *See* 20 C.F.R. § 404.1563(c). He is a high school graduate with vocational training in the area of auto body repair, which was completed in 1990. Prior to his disability, Mr. Cottrell worked as an assembler, machine operator, auto body repairman, cook, and cleaner; but, as the ALJ concluded and the parties agree, Mr. Cottrell had not engaged in substantial gainful activity during the time frame from his alleged onset date of disability through the date of the ALJ's determination.

Mr. Cottrell's medical problems before his disability onset date of July 19, 2004, reveal that in 2002 and 2003 Mr. Cottrell had a history of abnormally enlarged lymph nodes, inflammation of the pancreas, kidney stones, gastrointestinal bleeding, and he under went the removal of his gallbladder and spleen. By February 2003, Mr. Cottrell had a flare-up of what was believed to be bronchiactasis or a flare-up of his sarcoid, and he was diagnosed with sarcoidosis, which is inflammation that produces tiny lumps of cells (granulomas) in various organs in the body affecting how the organ works. Mr. Cottrell did not work from February to July 2003, when he was then taken off of Prednisone. During that time, Mr. Cottrell was diagnosed by Dr. Michael Lykens, treating physician and pulmonary specialist, with thrush (infection of the oral tissues), mild Cushingoid (resembling Cushing disease) with subnormal arterial blood pressure, and gastroesophageal reflux disease ("GERD"). Dr. Lykens also noted that Mr. Cottrell had hypertension ("HTN") which was aggravated by decongestants (prescribed

for inflammation of his lungs), and that he was undergoing diuretic therapy for his hypertension, and taking Tricor for his hyperlipidemia (increased lipids in the blood). On May 29, 2003, Dr. Lykens diagnosed Mr. Cottrell as having drug induced diabetes mellitus ("DM"), and he noted that Mr. Cottrell had been hospitalized with acute pancreatitis since his last visit in March 2003.

Mr. Cottrell returned to work in July with his sarcoid under much better control. Yet, on July 28, 2003, Dr. Zehra Haider, endocrinologist, noted that Mr. Cottrell's blood sugar and blood pressure were elevated and prescribed Diovan. Mr. Cottrell then experienced more medical problems and missed work from August until November 2003. Mr. Cottrell's family physician, Dr. Martha Hoshaw, noted on August 6, that Mr. Cottrell was taking Azathioprine. Also in August, Mr. Cottrell developed a rash from contact dermatitis, began having headaches, suffered an upper respiratory infection (later thought to be acute sinusitis). In September, Mr. Cottrell was diagnosed with pneumonia by Dr. Haider. In October, Dr. Hoshaw noted that Mr. Cottrell was experiencing either "cluster headaches" or a migraine variant, and she referred him to Dr. Mark Nenow, who noted that Mr. Cottrell was exposed to lubricant mist while working at Chrysler, and believed that Mr. Cottrell had allergic rhinitis (nasal mucous membrane inflammation), sepal deviation, immuno-suppression, and sarcoidosis. Dr. Wilson eventually performed sinus surgery on Mr. Cottrell, and from November 2003 to January 2004, Mr. Cottrell had two sinus cleanings and was taking over sixteen medications.

Approximately six months before Mr. Cottrell's alleged onset date, in January 2004, Dr. Haider noted Mr. Cottrell's continued poor controlled glycemia and Type II diabetes for which Actos was prescribed. In February, x-rays showed persistent streaky densities at the lung bases, and Dr. Hoshaw diagnosed Mr. Cottrell with acute bronchitis. In March, Mr. Cottrell was still working but his headaches were becoming more frequent, he experienced photophobia

(intolerance to light), and nausea. Mr. Cottrell was also experiencing depression, dizziness, bloody noses, and having difficulty sleeping. In April, Mr. Cottrell experienced chest pain, nausea, diarrhea, and muscle cramping in his extremities after working. On May 12-14, 2004, Mr. Cottrell was admitted to St. Joseph Hospital and was diagnosed with retroperitoneal (concerning tissue lining the abdominal wall) and/or mesenteric lymphadenopathy. Until May 17, Mr. Cottrell was admitted to the Indiana University Hospital, and a CT scan revealed nodules consistent with sarcoidosis and bronchiactasis. On June 3, Dr. Lykens noted his concern for Mr. Cottrell's increased activity related to sarcoidosis and minimal decrease in his total lung capacity.

Prednisone was resumed, and when he underwent a lumbar puncture on July 23, it was documented that Mr. Cottrell had a history of "multiple strokes" and sarcoidosis. On July 19, 2004, Mr. Cottrell's alleged disability onset date, Mr. Cottrell suffered a second stroke, and he testified before the ALJ that he had not worked since that date. After having sharp chest pain and right arm numbness, Mr. Cottrell was admitted to the emergency room on July 24-27, with a discharge diagnosis of neurosarcoidosis with acute cerebral vascular accident ("CVA"), sarcoidosis, chronic HTN, steroid-induced DM, hyperlipidemia, GERD, and chronic depression. In August and September 2004, Dr. Lykens gave a diagnostic impression that Mr. Cottrell had progressive sarcoidosis with neural involvement, and suspected that his headaches were related to blood pressure. From a respiratory standpoint, Dr. Lykens commented that Mr. Cottrell was doing reasonably well.

Throughout September 2004 until 2006, Mr. Cottrell had documented emotional problems involving depression, irritability, and anxiety, and his records reveal an instance which involved the police and Mr. Cottrell's shooting his dog that bit him. Also, from October 2004

4

until May 2006, Mr. Cottrell gained sixty pounds due to his high dose of steroids. On October 4, 2004, Dr. J.N. Sharma, neurologist, concluded that Mr. Cottrell had dyspnea (air hunger) or minimal exertion caused by advanced sarcoidosis causing extensive lung damage evident from the CT scan and x-rays, and uncontrolled insulin-dependent DM. Dr. Sharma reported a normal neurological examination, but noted that Mr. Cottrell was depressed due to his medical problems. The record reveals that Mr. Cottrell had ongoing problems with shortness of breath, high blood sugar, feeling emotionally anxious, tired, and having difficulty sleeping. Further, throughout the record, Mr. Cottrell was prescribed dozens of additional medications.

On December 13-16, 2004, Mr. Cottrell was hospitalized for sarcoidosis, bronchitis, DM, hyperlipidemia, possible neurosarcoidosis, and obesity. He was discharged in "fair" condition. By the end of the year, Dr. Sharma noted the exacerbation of Mr. Cottrell's sarcoidosis, insulin-dependent DM, and psychiatric problems. After vomiting for three days, Mr. Cottrell was again admitted to the emergency room and was diagnosed with leukocytosis (increased white blood cells in the blood).

In January 2005, Dr. Lykens referred to Mr. Cottrell's condition as refractory (resistant to treatment) systemic sarcoidosis. On the 15th, Mr. Cottrell was admitted to the emergency room with pneumonia, and discharged with acute exacerbation sarcoidosis, history of neurosarcoidosis, upper respiratory infection, immuno-suppressed state, steroid-induced insulin-dependent DM, chronic HTN, chronic allergic rhinitis, and chronic anxiety/depression. On the 19th, Mr. Cottrell was again seen in the emergency room with a headache, and was found to have acute otitis (inflamation) of the left ear.

In February 2005, Dr. Mattson commented that Mr. Cottrell had not had neurological problems since his stroke-like episodes the previous summer, and commented that Mr. Cottrell's

5

most serious medical problem was his sarcoidosis. On March 11, 2005, an MRI scan of Mr. Cottrell's brain revealed findings that were nonspecific, but given Mr. Cottrell's history of sarcoidosis, Dr. Vincent Mathews opined that neurosarcoidosis was the most likely diagnosis. Dr. Mathews noted that demyelination related to multiple sclerosis or other inflammatory processes could give a similar MRI appearance. Also in March, Dr. Egan noted that there was no progression of Mr. Cottrell's disease as he responded well to high doses of steroid and Imuran therapy, but noted that the side effects of the steroids included diabetes, weight gain, and mood instability. On March 30, 2005, Mr. Cottrell was diagnosed with acute sinustis.

On May 24, 2005, Mr. Cottrell reported a great deal of improvement in his shortness of breath. Dr. Lykens reported in April that Mr. Cottrell's lungs were clear to auscultation and percussion, and commented that Mr. Cottrell's pulmonary function tests and chest findings were very good, and were never the crux of his disease or sarcoid. Mr. Cottrell was also diagnosed with obstructive sleep apnea, hypoxemia (decreased oxygen), respiratory insufficiency, and inadequate sleep hygiene. In June, Mr. Cottrell was diagnosed with folliculitis (inflamation of the hair follicles).

On June 13, 2005, Dr. David H. Gover, Ed.D., conducted a mental status exam, and reported no in or outpatient psychological treatment of Mr. Cottrell, and assigned a Global Assessment of Functioning Rating ("GAF") of 65, indicative of few mental problems. Mr. Cottrell, although confused about the month in which Labor Dar occurred, answered the five other general information questions correctly. Also, as of June 2005, Dr. Mattson found that there were no objective findings to support the diagnosis of headaches, only subjective notations existed,— which he stated is common; but, Dr. Boyce noted that the headaches could be related to the type of abnormalities seen on Mr. Cottrell's MRI taken on June 22, 2005.

In August 2005, Mr. Cottrell's CT scan revealed new multiple bilateral lung nodules, unchanged subcarinal, and right hilar lymphadenopathy. In November, Dr. Paul Skierczynski initiated U-500 insulin therapy to decrease Mr. Cottrell's glucose levels, and described Mr. Cottrell as an "out of control type 2 diabetes patient" with increased fatigue and weight gain of forty pounds over the past year.

In January 2006, Mr. Cottrell experienced hip pain, diarrhea, myalgias, fever, and he became cognitively sluggish. Once again, an MRI revealed multiple foci of periventricular white matter and high T2 signal intensity which was increasing in the frontal and occipital horns of the lateral ventricle, as compared to the prior MRI. The hyper-intensity was suggestive of demyelinating disease or sarcoidosis. Dr. Lykens diagnosed Mr. Cottrell with acute viral syndrome, and reported that Mr. Cottrell's sarcoidosis seemed to be stable, his pulmonary function studies slightly improved, and his diabetes and blood pressure under better control. Yet, one month later, in February, Dr. Skierczynski noted that Mr. Cottrell's type II diabetes was out of control and aggravated by Prednisone therapy. In March, Dr. Lykens felt that Mr. Cottrell was having a flare of his sarcoid based on a rash that was present until April. Mr. Cottrell also developed cataracts and thrush on his tongue.

On May 2, 2006, Dr. Mattson filled out a "Headache Questionnaire" and diagnosed Mr. Cottrell with chronic daily headaches. He did so by relying on Mr. Cottrell's history, and without objective findings to support the diagnosis. The following day, Dr. Lykens responded to three questionnaires, and opined on the "Rest Questionnaire" that Mr. Cottrell was not a candidate for employment due to his multiple medical problems and severe sarcoidosis including his neuro system.

Mr. Cottrell's administrative hearing was held on May 8, 2006. Thereafter, from August 26-30, Mr. Cottrell was hospitalized and discharged with a diagnosis of pneumonia, sarcoidosis, immuno-suppression, DM, hypertension, reflux disease, obstructive sleep apnea, and obesity, and was prescribed a CPAP machine (to help with his sleep) and numerous medications, including Oxycodone.

Despite the above medical record, the ALJ concluded that Mr. Cottrell could perform a limited range of sedentary work.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is a limited one. Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In making a substantial evidence determination, the court will review the record as a whole, but will not reconsider the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *William v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999). That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Thus, if reasonable minds could disagree on whether an individual is disabled, the court must affirm the Commissioner's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

# DISCUSSION

Generally, "[b]enefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant bears the burden of showing, through testimony and medical evidence supported by clinical data and laboratory diagnosis, that he was disabled during the period in which he was insured. *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976) (citing *Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971)). Furthermore, the claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations supporting the Social Security Act create a five-step inquiry in determining whether a claimant is disabled, under which the ALJ must consider the applicant's claim in the following sequence:

1. Whether the claimant is currently employed;
2. Whether the claimant has a severe impairment;
3. Whether the claimant's impairment meets or equals one listed by the Secretary;
4. Whether the claimant can perform his past work; and
5. Whether the claimant is capable of performing any work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520). The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Bolinger v. Barnhart*, 446 F.Supp.2d 950, 955 (N.D.Ind. 2006).

In this case, the ALJ concluded at step one of the five-step disability determination, that Mr. Cottrell had not engaged in substantial gainful activity since the alleged onset date of his

disability, July 19, 2004. At step two, the ALJ concluded that Mr. Cottrell had a severe impairment as a result of sarcoidosis, diabetes, obstructive sleep apnea, and obesity. At step three, the ALJ determined that Mr. Cottrell did not have an impairment or combination of impairments which met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing(s)"). Thus, the ALJ determined that Mr. Cottrell retained a residual functional capacity ("RFC") to perform sedentary work with environmental limitations and restrictions, as long as Mr. Cottrell was allowed to take an additional, unscheduled five minute break per day. For purposes of step four, the ALJ found that Mr. Cottrell was not able to perform his past relevant work due to the lifting/exertional requirements. Finally, at step five, the ALJ determined that considering Mr. Cottrell's age, education, work experience, and RFC, there were a significant number of jobs that he can perform in the national economy. Therefore, the ALJ concluded that Mr. Cottrell was not under a disability as defined by the Act at any time from July 19, 2004 through the date of the ALJ's decision, July 24, 2007.

Mr. Cottrell alleges that the ALJ erred in assessing: (1) the severity of other impairments; (2) his credibility; (3) his residual functional capacity based on the treating physicians' opinions; and (4) his ability to perform substantial gainful activity. Mr. Cottrell requests that the Court reverse the decision of the ALJ and award benefits because a remand for additional findings would serve no useful purpose.

**(1)** **<u>Severity of Impairments</u>**

Social Security Ruling ("SSR") 86-8 states that an impairment is not severe if it is a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on the individual's physical or mental ability to perform basic work activities. The ALJ found that Mr. Cottrell suffered from the severe impairments of sarcoidosis, diabetes,

obstructive sleep apnea, and obesity, and that none of these impairments alone or in combination met or equaled a Listing in the Regulations. Mr. Cottrell alleges that the ALJ failed to include the more serious diagnosis of neuro-sarcoidosis,[2] hypertension, and/or emotional (mental health) problems as severe impairments at step two.

However, step two is a threshold analysis that requires Mr. Cottrell to show only that he has at least one severe impairment. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments."); *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) ("[I]t is quite apparent that severity is merely a threshold requirement."). The ALJ did find that Mr. Cottrell had a severe impairment; in fact, he found that Mr. Cottrell had several severe impairments, and the ALJ properly proceeded to step three in order to determine whether any of Mr. Cottrell's impairments qualified as a listed impairment. It is thus irrelevant that the ALJ did not make a specific step two finding for Mr. Cottrell's claims of neurosarcoidosis, hypertension, and emotional problems. *See id.* Because the ALJ properly considered the limitations posed by Mr. Cottrell's medical problems, his failure to find additional severe impairments had no bearing on the outcome.

---

[2]Mr. Cottrell offers the following definition of neurosarcoidosis from the website www.ninds.nih.gov:
> [c]haracterized by inflammation and abnormal cell deposits in any part of the nervous system – the brain, spinal cord, or peripheral nerves. It most commonly occurs in the cranial and facial nerves, the hypothalamus (a specific area of the brain), and the pituitary gland … The optic and auditory nerves can also become involved, causing vision and hearing impairments. It can cause headache (sic), seizures, memory loss, hallucinations, irritability, agitation, and changes in mood and behavior.

*See* Plf's Opening Brief, p. 19.

**(2)   Credibility**

The ALJ found that Mr. Cottrell's statements concerning the intensity, duration, and limiting effects of his symptoms were not entirely consistent with or fully supported by the medical evidence of record. Mr. Cottrell argues that the ALJ erroneously failed to provide an explanation for the belief that Mr. Cottrell's activities were inconsistent with his treating physician's opinions. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The court will not disturb the weighing of credibility so long as the determinations are not "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir. 2004)). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . .can the finding be reversed." *Prochaska*, 454 F.3d at 738 (citing *Sims v. Barnhart,* 442 F.3d 536, 538 (7th Cir. 2006)). An ALJ may disregard a claimant's assertions of pain if he validly finds the claimant incredible. *Prochaska*, 454 F.3d at 738 (citing *Carradine,* 360 F.3d at 753-54)). SSR 96-7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska*, 454 F.3d at 738. An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication). *Id*. (citing *Scheck v. Barnhart,* 357 F.3d 697, 703 (7th Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Further, once a claimant produces evidence of an underlying impairment,

12

the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Carradine*, 360 F.3d at 753. Instead, the ALJ must go beyond objective medical evidence in the record and consider seven factors found in the Social Security regulations in making a credibility determination including the following:

> (1) the individual's daily activity;
> (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) factors that precipitate and aggravate the symptoms;
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the symptoms;
> (5) treatment other than medication the individual receives or has received for pain or other symptoms;
> (6) any measures other than treatment the individual uses or has used to relieve pain and other symptoms; and
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

In the present case, the ALJ determined that while he believed that Mr. Cottrell experienced the symptoms of which he complained, he simply thought that the intensity, duration, and limiting effects of the symptoms were exaggerated by Mr. Cottrell. In so finding, the ALJ went into extensive detail regarding Mr. Cottrell's complaints of medical ailments, the treatment and medication Mr. Cottrell received, and the medical studies and tests Mr. Cottrell underwent for those problems. The ALJ explicated the doctor's opinions and prognosis based on the medical work-up over the years. The ALJ explained 'why' he found Mr. Cottrell's testimony to be exaggerated, by noting that Mr. Cottrell was not fully compliant with the doctor's orders regarding the use of his CPAP machine in 2005, and not fully compliant with the proper testing of his glucose levels and administration of his insulin in 2006.

13

Additionally, the evidence of record also reveals that Mr. Cottrell's activities went beyond simple child care, because he continued to drive long distances, and perform household chores such as vacuuming, washing dishes, cooking, and cutting his lawn with a riding lawnmower. Although Mr. Cottrell states that he was only able to accomplish these activities at a slow pace (because he gets short of breath and has no endurance), both Dr. Kalra in June 2005 and Dr. Hoshaw in January 2006, reported clear lungs. Moreover, as of March 2005, Dr. Lykens, treating physician and pulmonary specialist, acknowledged that Mr. Cottrell's pulmonary function test results and his chest findings had been very good. Therefore, Mr. Cottrell's hearing testimony that his most serious medical problem was shortness of breath (along with problems of bending and stooping due to his increased weight, low back pain, and loss of strength and grip in his right upper extremity) contradicts the medical records— as discussed by the ALJ.

Moreover, Mr. Cottrell's testimony before the ALJ contradicts his latest contention before this Court, that his fatigue is the problem causing significant interference with his daily activities. The ALJ considered Mr. Cottrell's testimony that he experiences concentration problems, due to getting agitated or by sometimes getting distracted by his kids— not because of his fatigue, as also opined by Dr. Lykens. The ALJ discussed the divergent medical opinions as to the limitations that Mr. Cottrell experienced from his medical ailments, and determined that Mr. Cottrell's medical problems did not keep him from performing sedentary work. Here, the Court cannot say that the ALJ stated in a conclusory manner that Mr. Cottrell's testimony regarding his limitations was not supported by the evidence, but he built an accurate and logical bridge from the evidence to his conclusion that Mr. Cottrell indeed suffered the symptoms to

which he complained, but to a lesser extent than claimed. The ALJ's credibility determination was not patently wrong.

**(3)** **RFC and Weight Afforded Treating Physicians' Opinions**

The ALJ determined that Mr. Cottrell has the capacity to do a reduced range of sedentary work, with environmental and postural considerations, so long as he is given an extra five minute break per day. Mr. Cottrell argues that the medical questionnaires reveal that his fatigue would interfere with his ability to concentrate to sufficiently complete tasks, deal with work stresses, and maintain reliable attendance; and that he needs complete freedom to rest frequently without restriction and to be afforded the opportunity to lie down for substantial periods of time during the day. As such, Mr. Cottrell argues that the ALJ failed to give the medical opinions of the treating physicians, Dr. Lykens and Dr. Mattson, the controlling weight or deference required, and the ALJ failed to discuss the factors leading to his assessment of the treating physicians' opinions. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d).

The claimant is correct that a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004)). However, a decision to deny a physician's opinion controlling weight does not prevent the ALJ from considering it, and the ALJ may still look to the opinion after opting to afford it less evidentiary weight. *Elder*, 529 F.3d at 415. Exactly how much weight the ALJ affords depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, *see* 20 C.F.R. § 404.1527(d)(2)(I)-(ii), whether the physician supported his or her opinions with sufficient explanations, *see id.* § 404.1527(d)(3),

15

and whether the physician specializes in the medical conditions at issue, *see id.* § 404.1527(d)(5). *Elder*, 529 F.3d at 415 (citing *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006)).

Here, the ALJ did not "play doctor" as claimant's counsel suggests, but acknowledged that generally greater weight is afforded to treating source opinions, but explained why he discounted the RFC assessments offered by Dr. Lykens and Dr. Mattson. The ALJ discounted Dr. Lykens' assessment because his conclusions that Mr. Cottrell's fatigue was related to his diabetes, is contradicted by Dr. Lykens' own statements that Mr. Cottrell's diabetes or glucose were under much better control in 2006. Further, the ALJ acknowledged that it is difficult to confirm when a treating physician sympathizes with the patient, but in the instant case the ALJ felt that Dr. Lykens' opinion as to Mr. Cottrell's disability was not entirely supported by the record. To the extent that Mr. Cottrell argues that "[t]here is nothing in the entire record to contradict Dr. Lykens' opinion [that fatigue would interfere with Mr. Cottrell's ability to work]", Mr. Cottrell's own failure to state 'fatigue' as a main medical problem (during the administrative hearing)— is such contradictory evidence. Furthermore, Dr. Boyce, the medical expert and only physician of record who had access to the entire record, discussed the issue of fatigue and felt that Mr. Cottrell's fatigue was not severe.

The ALJ also discounted Dr. Mattson's conclusions regarding Mr. Cottrell's headaches because they were inconsistent with Mr. Cottrell's own statements as to the severity and duration of his headaches, and inconsistent with the medical evidence revealing no objective findings to support Dr. Mattson's diagnosis of chronic headaches. Further, no medication was prescribed for the condition. No less, the ALJ explained that while the state agency reviewing physicians' were non-examining, and that their opinions were entitled to less weight than examining or

16

treating physicians, their RFC conclusions and finding of non-disability deserved some weight where their opinions were consistent with the record evidence in light of Dr. Boyce's opinion, the hearing testimony, and Mr. Cottrell's report of his daily activities.

Lastly, the Court agrees with the Commissioner that the ALJ's RFC finding of sedentary work that allows for the additional five minute break is a finding that is more restrictive than the findings of the state agency physicians and even more restrictive than the RFC set out by Dr. Boyce, the medical expert. In this case, the treating pulmonary specialist, Dr. Lykens, saw Mr. Cottrell as disabled, the state agency physicians saw him as capable of light work, and the medical expert saw him as capable of only sedentary work— and the ALJ was charged with resolving the conflict. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001). Here, the ALJ resolved that conflict by accepting Dr. Boyce's RFC, but adding an additional limitation, and the ALJ did not err in accessing the medical opinions and Mr. Cottrell's RFC.

**(4)** **Ability to Perform Substantial Gainful Activity**

The ALJ determined that Mr. Cottrell could perform substantial gainful activity, or sedentary work, even if he had to miss one day of work per month and take an additional five minute break daily.

Mr. Cottrell argues that the ALJ "played doctor" by not recognizing that Mr. Cottrell's symptoms would interfere with his ability to maintain reliable attendance and ability to perform his job duties. Dr. Lykens vehemently supports Mr. Cottrell's position that he is entitled to social security benefits. While Mr. Cottrell does not contend that the vocational expert did not know the extent of Mr. Cottrell's limitations, he does contend that the ALJ should *not* have inquired of the vocational expert whether a hypothetical individual who needs additional breaks (or to miss one day of work a month) could still perform a significant number of sedentary jobs.

17

The Court does not agree. The ALJ's RFC determination was proper for reasons previously discussed. Furthermore, the ALJ appropriately considered the fact that Mr. Cottrell was limited in his ability to perform sedentary work, and was entitled to ask the vocational expert not only whether Mr. Cottrell could perform jobs in the national economy based on his age, education, work experience, and RFC, but the ALJ was entitled to consider the length and number of breaks that would be allowed, in order to determine when a finding of disabled would be required. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002) (when a judge poses a hypothetical question to a vocational expert, the question must include all limitations supported by the record). The ALJ was entitled to allow Mr. Cottrell an additional five minute break, and was entitled to rely on the vocational expert's testimony that with Mr. Cottrell's limitations he could perform the requirements of a hand packer, cashier, and general office clerk. The ALJ accepted the answer provided by the vocational expert, which was not error.

ALJ Americanos discussed the evidence favoring Mr. Cottrell's position, as well as the evidence supporting the denial of benefits, and built an accurate and logical bridge from the evidence to the decision to deny Mr. Cottrell benefits. Accordingly, the ALJ's finding that Mr. Cottrell was not disabled as defined by the Social Security Act is supported by such relevant evidence as a reasonable mind might accept as adequate to support his conclusion, and the Court will not disturb the ALJ's decision.

## CONCLUSION

The purpose of this Court's review of the ALJ's decision is only to ensure that it is supported by substantial evidence. Therefore, given that the ALJ's decision was supported by substantial evidence, the decision of the Commissioner is **AFFIRMED.**

**SO ORDERED**.
**DATED: September 29, 2008**

             /s/ ALLEN SHARP
             **ALLEN SHARP, JUDGE**
             **UNITED STATES DISTRICT COURT**